```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF TEXAS

 3                        MCALLEN DIVISION

 4  UNITED STATES OF AMERICA      §   CASE NO. 7:21-CR-2453
                                  §   MCALLEN, TEXAS
 5  VERSUS                        §   THURSDAY,
                                  §   MAY 18, 2023
 6  BRENDA BELINDA BARBA          §   10:16 A.M. TO 10:40 A.M.

 7
                            SENTENCING
 8
              BEFORE THE HONORABLE MICAELA ALVAREZ
 9                  UNITED STATES DISTRICT JUDGE

10

11

12      APPEARANCES:                 SEE NEXT PAGE

13      ELECTRONIC RECORDING OFFICER: STEPHANIE GARCIA

14      COURT INTERPRETERS:          CHRISTINA HELMERICHS
                                     ELENA MEDRANO
15

16

17

18

19

20              TRANSCRIPTION SERVICE BY:

21         JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 Eldridge Road, #144
22                Sugar Land, TX 77478
                     281-277-5325
23            www.judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.
```

```
 1                         APPEARANCES:
 2
 3   FOR PLAINTIFF:             OFFICE OF US ATTORNEY
                                Lee Alfred Fry, Esq.
 4                              1701 E. Hwy. 83
                                Suite 600
 5                              McAllen, TX  78501
                                956-618-8010
 6
 7   FOR DEFENDANT:             ATTORNEY AT LAW
                                Mervyn M. Mosbacker, Jr.
 8                              2777 Allen Parkway
                                Suite 1000
 9                              Houston, TX  77019
                                713-526-2246
10
                                LAW OFFICE OF NOE
11                              DOMINGO GARZA
                                Noe D. Garza, Jr. Esq.
12                              854 E. Van Bruen Street
                                Brownsville, TX  78520
13                              956-544-2911
14
15
16
17
18
19
20
21
22
23
24
25
```

1         **MCALLEN, TEXAS; MONDAY, MAY 18, 2023; 10:16 A.M.**

2                THE COURT:  Next is 21-2453, Brenda Belinda Barba.

3                MR. FRY:  Good morning, Your Honor, Lee Fry on

4    behalf of the United States present and ready.

5                MR. MOSBACKER:  Merv Mosbacker for Ms. Barba, Your

6    Honor.

7                MR. GARZA:  Tony Garza, also on behalf Ms. Barba.

8                THE COURT:  Ms. Barba, please raise your right

9    hand to be sworn in.

10         (Defendant sworn.)

11                THE COURT:  Ms. Barba, you are before the Court

12   for sentencing on a charge of smuggling goods.

13                Do you understand this?

14                DEFENDANT BARBA:  Yes.

15                THE COURT:  Okay.  And who's going to address the

16   Court?

17                MR. MOSBACKER:  Your Honor, I think both address.

18   I'm just going to basically address the guideline issues.

19                THE COURT:  I prefer one counsel, can one of you

20   do both?

21                MR. MOSBACKER:  Yes, Your Honor.  I can proceed.

22                THE COURT:  All right, the first question is did

23   you receive and review the Presentence Investigation Report?

24                MR. MOSBACKER:  Yes, Your Honor.

25                THE COURT:  And did you review it with Ms. Barba?

1           MR. MOSBACKER:  Yes, Your Honor.
2           THE COURT:  Ms. Barba, did you review with your
3  attorneys the Presentence Investigation Report?
4           DEFENDANT BARBA:  Yes.
5           THE COURT:  Is there a motion from the Government?
6           MR. FRY:  Yes, Your Honor.  The Government move
7  the third point due to acceptance of responsibility.
8           THE COURT:  The Court will adopt that
9  recommendation.  The guideline range becomes 46 to 57
10 months.
11          Do you understand that, Ms. Barba?
12          DEFENDANT BARBA:  Yes.
13          THE COURT:  Mr. Mosbacker, is there anything you
14 wish to say then on your client's behalf?
15          MR. MOSBACKER:  Yes, Your Honor.  I did file
16 objections to the Presentence Investigation Report.  I'm
17 sure the Court is familiar with those.  I'd like to point
18 out a couple of things about those objections.
19          One, is in this guideline application of, it
20 assumes for a Level 26 that the conduct was harmful or had
21 the potential to be harmful for the security or foreign
22 policy interest of the United States.
23          I don't believe that is applicable here.  That
24 would be applicable at least for weapons like AR15's or
25 heavy caliber rifles or ammunition that was intended for

1  drug cartels or somebody else that would use those weapons
2  in a manner that would be harmful to our security interest,
3  as well as Mexico's, Your Honor.
4         And on some related guideline levels concerning
5  national security controls or controls relating to the
6  proliferation of nuclear biological or chemical weapons,
7  that's a Level 26, as well.
8         I don't believe that her being in possession of
9  two pistols and some ammunition intended to be exported to
10 Mexico qualifies at the Level 26.  I believe that the
11 Level should be Level 14.
12        And another related guideline is the exportation
13 of arms, ammunitions or military equipment, which also would
14 garner a Level 6, and Level 14 if it involved only non-fully
15 automatic rifles, Your Honor.  That would be a Level 14
16 under that guideline provision.
17        And finally, there's a guideline provision
18 concerning the disclosure of information identifying a
19 convert agent of the United States and that's a Level 25.
20        I believe the correct Level here should be
21 Level 14, Your Honor.  And for a number of reasons we
22 believe that the Court should consider a downward departure
23 to a Level 10 from Level 14 because Ms. Barba has complied
24 with all of the conditions of the Court including at the
25 time she was depressed.  She had post-partum depression.

1        THE COURT:  So let me first address as far as the
2   Base Offense Level.
3        The Court did look at your objections.  And while,
4   you know, what you cite is correctly cited, the guidelines
5   are applied according to the guidelines.  And in this case
6   there is no doubt that we have more than 500 rounds of
7   ammunition.  So that puts us squarely within the guidelines.
8        There is, I think, always a concern when we have
9   the AR style type of weapons being exported that they're
10  being exported for the cartels, but I know of nothing that
11  we know plenty of instancesa where the cartels are using any
12  and every kind of weapon that there is.
13       I know of nothing that says oh no, the only thing
14  that we will accept is AR style weapons or fully automatic
15  weapons.  So and we have the Government's response that
16  appears to support the argument, these weapons were being
17  exported for somebody else.  You know, who exactly that
18  other is, I don't know.
19       But totally the story that Ms. Barba gave here
20  that, you know, she was just taking them for their own
21  personal use at the ranch doesn't seem to correspond to what
22  the Government found here.
23       So I understand generally the reason why this
24  particular guideline starts out at 26, but I do think that
25  it does apply in this case.

1          MR. MOSBACKER:  Yes, Your Honor.  I believe that
2   if the Court considers application of one, if that
3   application though says this assumes that it is going to
4   implicate a national security interest of the United States.
5          THE COURT:  Which I think there -- I think it is
6   safe to assume that because guns going into Mexico -- again
7   the cartel does not, to my knowledge, reject weapons simply
8   because they are not their preferred weapons.
9          And again, there is no indication here that the
10  weapons were going to a cartel individual.  But that is a
11  consideration when we have guns being unlawfully exported
12  here.
13         MR. MOSBACKER:  Yes, Your Honor.  Also, concerning
14  her situation at the time.  She was -- and the Court did
15  have her assigned to a counselor, a psychologist, to deal
16  with her issues of depression.
17         She has complied fully with all of the Court's
18  requirements.  She has essentially been on probation for a
19  year and a half and complied with everything the Court has
20  requested.
21         She is completely -- she's not a person that the
22  Court would ever see in here again or any other court would
23  see.  She has no criminal history, Your Honor.  And she does
24  have her family that she helps support.
25         She and her husband have been together since they

1  were in high school.  They've been married since 2014.
2  Together they started a business.  He does fencing and
3  employs persons in that capacity.  She supports him doing
4  paperwork and printing flyers and doing all kinds of things.
5  It is a family run business, which I'm sure the Court can
6  appreciate.  It's -- there's a lot of hard work and she is
7  an essential part of that business, Your Honor.
8            We would ask the Court to consider all of that in
9  determining whether a downward departure and a split
10 sentence would be appropriate.  We believe that would fully
11 comply with the requirements of 2253(a) and she is a
12 candidate, I believe, that's suited for that kind of
13 sentence, Your Honor.
14           THE COURT:  Is there anything that you wish to
15 say, Ms. Barba?
16           DEFENDANT BARBA:  Buenos tardes.
17           THE COURT:  I'm sorry, we've been doing this all
18 in English, do you need an Interpreter?  You really should
19 alert the Court this as we begin with.
20           So have you understood all the English?
21           DEFENDANT BARBA:  I did.  I just -- I'm pretty
22 nervous for now.  I prefer if I listen to you in Spanish.
23           THE COURT:  That's fine, but I will then ask you
24 then to make sure that you give the translator an
25 opportunity to do so.

1          (Defendant responds in Spanish.  Court stops her.)
2                 THE COURT:  Okay, I'm going to ask you to hold
3     just a second.
4                 DEFENDANT BARBA:   Yes.  First of all, I ask the
5     Court to forgive me for this mistake I made 18 months ago.
6     It's been a really difficult 18 months.
7                 I've been through daily depression and solidly
8     restlessness.  I mean, I would like to say many things, but
9     I'm at a loss of words.
10                I mean, I have three children waiting for me at
11    home.  A five-year-old son that's about to start school, a
12    four-year-old girl, and a five-month-old baby that I'm still
13    breastfeeding.
14                I beg you to forgive me.  It's been very difficult
15    these last 18 months, but I have complied with all the rules
16    of counseling or probation and every other condition put on
17    me.  I have not failed that.
18                I do need to be with my family.  I'm extremely
19    remorseful for what I did.  It's been a big lesson for me.
20    It's opened my eyes wide to how huge that mistake was.
21                I ask the Court to forgive me.  And obviously I
22    promise it will never happen again.  I will never do this
23    again.  I have seen how my family has changed -- my husband,
24    my children.
25                THE COURT:  Continue.

1          DEFENDANT BARBA:  And I just beg you to understand
2 how the biggest thing a mother can suffer being separated
3 from their children leaving them behind.  I cannot even
4 imagine being away from them any more.
5          Me and my husband, unfortunately, are by
6 ourselves.  We don't have anybody else to help care for our
7 children.  And he has to work very hard to support the
8 family.  And I am there to protect them and guide them and
9 also to be good example for them.
10         I want to be with my family and ask the Court to
11 please grant me that opportunity to be for my children here.
12 And I swear I will comply with any move that the Court may
13 impose.  I can assure you I will not fail at that.
14         I humbly ask you to be able to be with my family.
15 That's all.
16         THE COURT:  Thank you.
17         Anything from the Government?
18         MR. FRY:  Just for the record, Your Honor.  The
19 Government believes that application note one is not
20 applicable to determining the total offense level, is
21 requesting a departure (indiscernible) certainly that's
22 within the Court's discretion.
23         But we do believe it is supportive of Base Offense
24 Level 26 coming to a total offense Level of 23.
25         Additionally, Your Honor, the Government leans on

1  it's response to the Defense's objection indicating those
2  messages.  So we would sentence within the guidelines.
3           THE COURT:  And so I have a question regarding
4  those messages.  I couldn't tell -- maybe it's my poor
5  eyesight -- but all of them say delivered on the 29th.  I
6  take it that is when all of this was extracted from the
7  phone because that's the date of the offense.
8           But do -- would you have any indication there as
9  far as the time frame for these messages?
10          MR. FRY:  Your Honor, those messages would have
11 been sent on the date of the offense.
12          THE COURT:  So this is actually the date --
13          MR. FRY:  Yes, Your Honor.
14          THE COURT:  -- a lot of them.  Okay, because
15 initially I thought that, well, it doesn't seem to make any
16 sense because there's so many of them.  But it is your
17 understanding that this was the --
18          MR. FRY:  Yes, Your Honor.  When they're extracted
19 they indicate the date that they were delivered.  That being
20 the date and time it was sent, not the date of extraction.
21          THE COURT:  Okay, so.
22          MR. MOSBACKER:  Your Honor, if I could add one
23 thing?
24          THE COURT:  Briefly.
25          MR. MOSBACKER:  Yes, the Court I'm sure is aware

1  that you can consider especially in mental and emotional
2  conditions that are severe consider a downward departure.  I
3  believe the psychologist that she's been seeing at the
4  Court's direction and the Court has provided that service,
5  believes that her depression is still ongoing and it's
6  severe -- it was severe at the time of these offenses.
7           THE COURT:  Well, I don't have any psychological
8  report that gives me the psychologist's opinion.  And
9  certainly while I understand that Ms. Barba is suffering
10 from anxiety depression that, you know, is not actually
11 disputed.
12          But I can address all that once I address the
13 sentencing.
14          MR. MOSBACKER:  Yes, Your Honor.
15          THE COURT:  All right, so Ms. Barba, the Court
16 does consider everything that has been presented and one of
17 the things you noted was about how difficult it was for you
18 to leave your children.
19          I take it to mean to come down here today.  But
20 unless that report is missing something, you apparently left
21 them when you were in the process of taking these weapons
22 into Mexico.  So I don't -- I think that's something that's
23 never happened before.
24          And I know that you may be thinking like into the
25 future if you have to be separated from them because of

1   serving time in prison.  And certainly that will be very
2   difficult for you and for them as well.
3            And I have no doubt that children suffer extremely
4   when, you know, they have a parent who is separated from
5   them and especially if they're old enough to understand that
6   the parent is in prison.  And that's a very difficult
7   situation.
8            But Ms. Barba, and your counsel didn't necessarily
9   touch on it, but I'm very troubled by these messages that
10  the Government provided to the Court.  Because it certainly
11  appears to the Court that there's a lot more going on here
12  than your story of, you know, just taking two weapons into
13  Mexico for purposes of having them at your family ranch.
14           And it also doesn't, you know, something is just
15  missing for the Court here because Mr. Mosbacker talked
16  about your business with your family.  You talked about how
17  you're, you know, you've been a devoted mother and taking
18  care of your children.
19           So I don't know what the situation is about you
20  having claimed that you were coming in to do some errands
21  and go back to the family ranch.
22           So, I haven't quite understood the whole picture
23  here, but the one thing that strikes me here as I read
24  through these messages is one for my reference here there's
25  a lot of them.

1          From what the Government submitted to me that's on
2 page 274.  It is in Spanish and certainly if counsel wants
3 to look and disagrees with the Court's translation I can
4 have the translator translate.  But basically it's in
5 Spanish.  "I can take as many as you want and as often as
6 you want.  All you have to do is basically, you know, give
7 me the opportunity to open that path for me."
8          So it certainly sounds like -- and this is, of
9 course, in combination with all the other messages here.
10 But it certainly sounds like you were working with some
11 individual down there to take weapons down there at their
12 request.
13          There's a lot of reference to what kind of weapon
14 or weapons you'll be taking.  And reference to already have
15 seen some other weapons.  So, the Court's concern here,
16 Ms. Barba, is not just that you have a family that you're
17 going to be separated from that your children will suffer.
18          Surely that is something to be taken into account.
19 And, you know, agree the Court has a lot of discretion even
20 if the guidelines didn't provide for the Court being able to
21 take into account a person's mental health status.
22          The Court has all the discretion except we're
23 limited for things that should not be considered.  But the
24 Court has all the discretion that it needs to address an
25 individual's needs, to consider their history, their

1  characteristics.
2          But I also have to balance that with other
3  interests.  And some of the other interests are, you know,
4  the safety of the community.  And even though these weapons
5  were going into Mexico, there's nothing that I'm aware of
6  that says I consider this geographical community here.
7          Because, you know, we are right on the border and
8  what happens in Mexico effects us in many ways.  And so that
9  is something that the Court considers, as well.
10         I don't believe that your mental health one, that
11 it was the cause of this offense.  Sometimes we do have
12 those situations.  But I don't think that because you were
13 suffering from depression it somehow caused you to engage in
14 this.
15         I think the depression and anxiety that you may be
16 suffering if probably the result of having involved yourself
17 in this offense.  And surely that's understandable, but I
18 don't believe that it is such that it can't be properly
19 addressed even if you are in custody.
20         The Court does consider all the 3553 factors in
21 this case.  I understand the argument as far as when we are
22 looking at some of these offenses, the interest that are
23 being considered here and the Court does believe that really
24 when you look at this offense, it's not the typical
25 exporting the firearm offense that we have only in light of

1  the nature of the weapons involved in this case.
2         But otherwise, we have these happen is, you know,
3  one firearm, two firearms, you know, three firearms.  And
4  many of them wind up in the hands of people who are not
5  simply seeking to protect themselves, but are using them for
6  the purposes.
7         Again, here I have no indication of who this
8  person that you're communicating with may be, but it
9  certainly does cause the Court a lot of concern.
10        The Court only because I think that there is some
11 argument made as far as where you fall in the guidelines in
12 light of the particulars of the weapons and ammunition and
13 that it is just slightly over the 500 limit.
14        The Court is going to grant a slight departure
15 here.  The Court is going to sentence you here to a term of
16 36 months in custody.
17        I am also imposing here a three-year term of
18 supervised release.  While you're under Court supervision,
19 you're not to commit another federal, state or local crime.
20 You are to comply with the standard conditions adopted by
21 the Court.
22        Additionally, you are not to possess a firearm,
23 ammunition, destructive device or any other dangerous
24 weapon.  You are to participate in a mental health program
25 as an out patient as set out in the appendix to the

1  Presentence Investigation Report.
2          The Court also finds that you do not have the
3  ability to pay the fine, will waive the fine, but you do
4  have to pay the $100 special assessment.
5          And then was the Government seeking forfeiture
6  here?
7          MR. FRY:  Yes, Your Honor, the Government would
8  ask that the preliminary report to remain a part of the
9  judgment in this case, Your Honor.
10         THE COURT:  All right, anything to address as far
11 as the forfeiture, Mr. Mosbacker?
12         MR. MOSBACKER:  No, Your Honor.  I did have
13 discussions previously with the forfeiture attorney.  He
14 said they weren't proceeding, but I'll take counsel's word
15 that they --
16         THE COURT:  Well, there was a notice filed in this
17 case.
18         MR. MOSBACKER:  There was a notice filed and I was
19 in discussions with Ms. Mitchell and also with the
20 forfeiture attorney.  And they had notified me that they
21 weren't seeking forfeiture through the Court.
22         THE COURT:  Okay, so anything else?
23         MR. MOSBACKER:  I have nothing else, Your Honor.
24         THE COURT:  All right.  Okay, the Court -- I will
25 grant the Government's motion.

1              Ms. Barba, you do have the right to appeal.  If
2  you wish to appeal, you need to advise your attorney.  The
3  appeal needs to be filed within 14 days.  If you cannot
4  afford an appeal, you may file for *in forma pauperis* in
5  which case the Court will file your notice of appeal and the
6  Court will appoint appellant counsel.
7              And Ms. Barba has been out on bond.  Does the
8  Government object to her continued release status?
9              MR. FRY:  No objection, Your Honor.
10             THE COURT:  So the Court will allow you to
11 continue out on bond, Ms. Barba, until you are notified of
12 when and where to appear.  You must appear as you are
13 notified to do so; otherwise, you could be facing additional
14 charges.
15             Do you understand that?
16             DEFENDANT BARBA:  Yes.
17             THE COURT:  Anything else?
18             MR. MOSBACKER:  Not at this time, Your Honor.
19             THE COURT:  All right.  Thank you.  You may be
20 excused.
21             MR. FRY:  Your Honor, may I be excused?
22             THE COURT:  You may.
23         (Proceedings adjourned at 10:40 a.m.)
24
25                         * * * * *

1          *I certify that the foregoing is a correct*
2    *transcript to the best of my ability produced from the*
3    *electronic sound recording of the proceedings in the above-*
4    *entitled matter.*
5    */S/ MARY D. HENRY*
6    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*
7    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*337*
8    *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*
9    *JTT TRANSCRIPT #67385*
10   *DATE FILED:  JULY 4, 2023*
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25